LACKEY McHUGH, Plaintiff, *v.* THE CITY OF CINCINNATI, Defendant.

In April, 1868, the plaintiff was elected one of the three city commissioners of Cincinnati for the term of three years, with a salary of $2,000 per annum, under the municipal act of 1852, which was repealed by the municipal code of 1869, during the term for which he was elected. The city government was reorganized under the code without the "city commissioners," and the city council refused to pay to plaintiff any salary after such reorganization.

*Held,* that section 728 of the municipal code of 1869, providing that the 'mayor, trustees, marshal, treasurer, and all officers elected" and in

office under the former act, "should remain in their respective offices and perform the duties thereof, under the provisions of this act, until the time should expire for which they had been elected, and until their successors should be chosen and qualified," did not save the office of "city commissioner" to the plaintiff, because the new code provided for the election of no officer who could be regarded as his successor, and his office was therefore abolished by the repeal of the act under which he was elected, and the enactment of the new code.

IN GENERAL TERM ON ERROR.—The petition shows that the plaintiff was elected in April, A. D. 1868, to the office of city commissioner took the oath, and gave the bond, and entered upon the duties of the office for the term of three years, at a salary of two thousand dollars per annum. And that since July 1, 1869, the city council has refused to pay the plaintiff any salary, and that on the 1st day of August, 1870, the unpaid salary amounted to $2,166.66, for which he sues.

To this petition the city demurs, and the ground on which the demurrer is sustained in argument is, that by the municipal code enacted in 1869, the act creating the office of city commissioner was repealed; that the city was organized under the code, and the office of city commissioner has thus been abolished by the legislature.

The plaintiff claims that he is entitled to the protection of the provision that "the emoluments of no officer whose *election* or appointment is required in this act, shall be increased or diminished during the term for which he may have been elected or appointed." (2 S. & C. 1521, 1522, sec. 88.)

This section continues, "Nor shall any change of compensation effect any officer, whose office shall be created under the authority of this act, during his existing term, unless the office be abolished." This section was contained in the municipal act of 1852, and remained in force until the municipal code of 1869 was adopted.

The petition does not aver any performance of duty, or offer to perform duty, in the office to which the plaintiff was elected in the time for which he claims compensation.

But he claims that the salary is incident to the office, and that it is not necessary to allege performance of official duty. Section 76 of the act of 1852 provided for the election of "*three city commissioners*," and prescribed certain duties to be performed by them; that they should perform "such other duties as the council should by ordinance prescribe;" that they, with the mayor and city civil engineer, "should constitute the board of city improvements, and receive such compensation for their services as the city council might determine;" and the board of city improvements were to exercise "such powers, and perform such duties in the superintendence and construction of public works, constructed by authority of the council, or ordered by the city, as the said council might from time to time prescribe."

By section 496 of the municipal code of 1869, it is provided that, "Whenever the council of any city shall establish a board of improvements, such board shall be composed of the mayor, the civil engineer, THE STREET COMMISSIONER, the chairman of the committee on streets of the city council, and one resident freehold elector of the corporation, to be appointed by the mayor, with the consent of the council, for such time as may by ordinance be provided."

Section 497 of the same act prescribes "that it shall be the duty of the board to supervise the lighting, cleaning, repairing, and improving of all streets, alleys, public squares," and other public property named, "within the corporation, or the control of the council thereof."

By section 61 of the new municipal code, "The officers of cities of the first class shall consist of a mayor, solicitor, treasurer, *street commissioner*, police judge, prosecuting attorney of the police court, and clerk of the police court, all of whom shall be elected." The section enumerates other officers to be appointed. There is no provision for three "city commissioners," or for any "city commissioner," under that name.

By section 731 of the municipal code, the municipal act of 1852, under which the plaintiff had been elected one of the three city commissioners, together with a great number of other acts, were expressly repealed.

By section 728, "The mayor, trustees, marshal, treasurer, and all officers elected by the people, or appointed by any municipal corporation, then in office, were to remain in their respective offices and perform the duties thereof, under the provisions of this act, until the time had expired for which they had been elected, and until their successors should be chosen and qualified; but that all such officers should be subject to such rules and regulations, touching their duties and compensation, as the proper authority of any municipal corporation might provide."

*Ware & Disney*, for plaintiff.

*Walker, Conner & Warrington*, for defendant.

TAFT, J.    The common council have acted under the municipal code, adapting their ordinances to its requirements, according to which all "street commissioners and other officers" have been elected and have entered upon the performance of their duties under the new code, which commenced on the 1st day of July, 1869, leaving nothing for the "*city commissioners*" to do.    The law of 1852 had been repealed expressly.    It is claimed by the city solicitor that there is no place for them under the code, and that their offices were abolished by the repeal of the law creating them.

If the old act under which their offices were created had been repealed by the code without any reservation, the offices would have been abolished, as was held in the case of *Ohio, on the relation of Flinn,* v. *Wright, Auditor of State,* 7 Ohio St. 333, in regard to the act repealing the act under which Judge Flinn had been elected judge of the criminal

court.   We know of no constitutional restriction upon the legislature in regard to municipal officers.

Does, then, the reservation in favor of the mayor and others in office during the term for which they were elected, and until their successors in office should be elected and qualified, save the three city commissioners, of whom the plaintiff is one?   Have these three city commissioners any successors under the new code?   If they have not and can not have, when must the term of their office be held to expire if not upon the organizing of the city government under the new code, for they were elected for three years and "until their successors should be elected and qualified?"   If their offices have not been abolished and they are still in, and no successors can be elected, they have a permanency.   If they have successors, who are they?   Many of the duties which were required of the city commissioners devolve upon the different officers elected or appointed under the new code.   But we think that the three city commissioners can not be regarded as having successors under the new code, within the meaning of section 28 of the act, which provides for the continuance in office of the mayor and others named.   If they have any successor it must be the street commissioner.   But if these three city commissioners, under the old law, could be succeeded by one street commissioner, they could not constitute a part of the new board of improvements, with the mayor, engineer, chairman of the improvement committee, and resident elector to be named by the mayor.   If they were to be taken into that board, it would not be what the code provides.   If, on the other hand, we were to attempt to administer the law on the plan of preserving the old board till the term of its members should expire, we should find no less trouble.   These three city commissioners would go out of office one at a time, leaving that board imperfect, and there could be no introduction of the new officers elected under the code, as that would make a board such as neither act has ever provided for.

On the whole, we think that the purpose of the new law was to repeal the old act as to the office of city commissioners, and abolish the office, the consequence of which was also to abolish both the duties and the salary.

[Leave to file a petition in error in the Supreme Court has been refused.—EDS.]